| | |
|---|---|
| Rumualdo Lainez and Marvin Rivas Maldonado, <br><br> Plaintiffs, <br><br> v. <br><br> Francisco Baltazar, Sr., Francisco Baltazar, Jr., Across the Lake Farming Company, Inc., Douglas Tart, Ann Tart, and Michael Tart, <br><br> Defendants. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

## I. PRELIMINARY STATEMENT

1. Plaintiffs are migrant farmworkers who were victims of a human trafficking scheme. Defendants Francisco Baltazar, Sr. and Francisco Baltazar, Jr. ("the Baltazars") lured Plaintiffs from Florida to the farm of Defendants, Across the Lake Farming Company and Douglas and Ann Tart, in North Carolina with fraudulent promises of ample work, adequate housing, and free transportation to the job.

2. The Baltazars brought Plaintiffs to a substandard labor camp owned or operated by Defendants before there was regular work, and, upon arrival, announced that each worker had to pay several hundred dollars for his transportation from Florida to North Carolina. The Baltazars took these actions in order to trap Plaintiffs and the other workers on the crew into

1

debt. Then, the Baltazars forbade Plaintiffs and the other workers from leaving the camp while still in debt to them and threatened violence should workers try to leave while owing a debt. The Baltazars shot at some workers as they attempted to flee the camp. The Baltazars monitored Plaintiffs and thwarted their attempt to escape the camp. Plaintiffs were eventually rescued when federal and local law enforcement intervened.

3. Plaintiffs seek to redress the wrongs they suffered in connection with their employment by Defendants, and bring claims under the Trafficking Victims Protection Act 18 U.S.C. §§ 1581 et seq. ("TVPA"), the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801 et seq. ("AWPA"), and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §95-25.1, et seq. ("NCWHA").

4. Plaintiffs seek damages, declaratory relief and injunctive relief, pre- and post-judgment interest, costs of the action, attorney's fees, and other appropriate relief.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction of this matter pursuant to: 28 U.S.C. § 1331 (Federal Question); 28 U.S.C. § 1337 (Interstate Commerce); 18 U.S.C. § 1595(a) (TVPA); 29 U.S.C. § 216(b) (FLSA); 29 U.S.C. § 1854(a) (AWPA); and 28 U.S.C. § 1367 (Supplemental Jurisdiction). The court is empowered to make a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

6. Plaintiff Rumualdo Lainez ("Plaintiff Lainez") and Plaintiff Marvin Rivas Maldonado ("Plaintiff Rivas") are migrant agricultural workers as defined by 29 U.S.C. § 1802(8) and were employees of Defendants at all times pertinent to this action. During the

course of their employment, Plaintiffs were engaged in the production of goods for interstate commerce within the meaning of 29 U.S.C. §203(b).

7. Defendant Francisco Baltazar, Sr. ("Francisco Baltazar, Sr.") is a resident of Florida. At all times pertinent to this action, Defendant Francisco Baltazar, Sr. acted as a farm labor contractor of Plaintiffs within the meaning of 29 U.S.C. §1802(7), and an employer within the meaning of N.C. Gen. Stat. § 95-25.2(5), was utilized by Defendants Across the Lake Farming, Douglas Tart, and Ann Tart as a farm labor contractor, was engaged in interstate commerce or in the production of goods for interstate commerce within the meaning of 29 U.S.C. § 203(b), and acted as an employer or in the interests of an employer towards Plaintiffs.

8. Defendant Francisco Baltazar, Jr. ("Junior Baltazar") is a resident of Florida. At all times pertinent to this action, Defendant Junior Baltazar acted as a farm labor contractor of Plaintiffs within the meaning of 29 U.S.C. §1802(7) and an employer within the meaning of N.C. Gen. Stat. § 95-25.2(5), was utilized by Defendants Across the Lake Farming, Douglas Tart, and Ann Tart as a farm labor contractor, was engaged in interstate commerce or in the production of goods for interstate commerce within the meaning of 29 U.S.C. §203(b), and acted as an employer or in the interests of an employer towards Plaintiffs.

9. At all times pertinent to this action, Defendant Junior Baltazar was not registered as a farm labor contractor with the U.S. Department of Labor ("USDOL") as required by 29 U.S.C. § 1811.

10. Defendant Across the Lake Farming Company, Incorporated ("Across the Lake Farming") is a North Carolina corporation. Defendant Across the Lake Farming was founded by Defendants Douglas Tart and Ann Tart as a farming business. At all times pertinent to this action, Across the Lake Farming was an agricultural employer as defined by 29 U.S.C. §

1802(2), was engaged in business in Johnston County, North Carolina, was engaged in the production of goods for interstate commerce within the meaning of the FLSA, utilized Defendants Francisco Baltazar, Sr. and Junior Baltazar as farm labor contractors, and acted as employer or in the interests of an employer towards Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(g) and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

11. Defendant Across the Lake Farming may be served with process through its registered agent Defendant Ann Tart at 6465 Godwin Lake Road, Dunn, NC 28334.

12. At all times relevant to this action, Defendant Across the Lake Farming employed migrant and seasonal farmworkers to perform agricultural work including the harvest of seasonal crops.

13. Defendant Douglas Tart ("Douglas Tart") resides in Johnston County and owns and/or operates Across the Lake Farming located near Dunn, North Carolina in Johnston County, North Carolina. At all times relevant to this action, Douglas Tart was an agricultural employer as defined by 29 U.S.C. § 1802(2), was engaged in the production of goods for interstate commerce within the meaning of the FLSA, utilized Defendants Francisco Baltazar, Sr. and Junior Baltazar as farm labor contractors, and acted as employer or in the interests of an employer towards Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(g) and the NCWHA, N.C. Gen. Stat., § 95-25.2(5). At all times relevant to this action, Defendant Douglas Tart employed migrant and seasonal farmworkers to perform agricultural work including the harvest of seasonal crops. Upon information and belief, Defendant Douglas Tart is married to Defendant Ann Tart.

14. Defendant Ann Tart ("Ann Tart") resides in Johnston County and owns and/or operates Across the Lake Farming located near Dunn, North Carolina in Johnston County, North

Carolina. At all times relevant to this Complaint, Ann Tart was an agricultural employer as defined by 29 U.S.C. § 1802(2), was engaged in the production of goods for interstate commerce within the meaning of the FLSA, utilized Defendants Francisco Baltazar, Sr. and Junior Baltazar as farm labor contractors, and acted as employer or in the interests of an employer towards Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(g) and the NCWHA, N.C. Gen. Stat.§ 95-25.2(5). Upon information and belief, Defendant Ann Tart is married to Defendant Douglas Tart.

15. At all times relevant to this action, Defendant Ann Tart employed migrant and seasonal farmworkers to perform agricultural work including the harvest of seasonal crops.

16. At all times relevant to this action, Defendants Douglas Tart and Ann Tart were day to day managers with operational control over Across the Lake Farming.

17. Defendants Douglas Tart and Ann Tart were, at all times relevant to this action, officers and agents of Across the Lake Farms acting on behalf of and for the benefit of Across the Lake Farming.

18. At all times relevant to this action, Defendants had the power to hire and fire Plaintiffs.

19. Defendant Michael Tart ("Michael Tart") is a resident of Johnston County, North Carolina. He is the owner of the migrant labor camp ("Tart Labor Camp") located at 6928 Godwin Lake Road in Dunn, North Carolina where Defendants housed Plaintiffs while in North Carolina.

### IV. STATUTORY BACKGROUND FOR THE TRAFFICKING IN PERSONS AND FORCED LABOR CLAIMS

20. Plaintiffs Lainez and Rivas escaped forced labor and human trafficking as defined by the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"), Pub. L. No. 106-

386, 114 Stat. 1464 (2000), a federal law designed to punish human traffickers who use force, fraud, or coercion to obtain labor as a modern form of slavery.

21. As defined by the TVPA, "severe forms of trafficking in persons" is the "recruitment, harboring, transportation, provision, or obtaining of a person for labor or services" through the use of force, fraud, or deception to perform labor exacted through physical, mental or legal coercion. 22 U.S.C. § 7102(8)(b).

22. Traffickers coerce their victims into performing labor through a variety of means, including, inter alia, physical abuse, psychological abuse and threats, and isolation and confinement.

## V. STATEMENT OF FACTS

### A. Junior Baltazar Recruited Workers in Florida Using Fraudulent Promises Regarding the Terms of Their Employment in North Carolina

23. In April 2009, Defendants Across the Lake Farming, Douglas Tart and Ann Tart used the Baltazars to recruit Plaintiffs Lainez and Plaintiff Rivas for employment in North Carolina at the farm owned or operated by Defendants Across the Lake Farm, Doug Tart and Ann Tart while Plaintiffs were living in Ft. Pierce, Florida. Both Plaintiffs were recruited through advertisements placed by the Baltazars in Ft. Pierce offering work in tobacco in North Carolina.

24. The Baltazars had actual or apparent authority from Defendants Across the Lake Farming, Doug Tart and Ann Tart to recruit, hire and supervise migrant and seasonal workers for the 2009 harvest.

25. Over the phone, Junior Baltazar orally offered each Plaintiff work for a certain number of months planting and harvesting tobacco for Seven Dollars ($7.00) an hour in North Carolina.

26. Junior Baltazar told Plaintiff Lainez and Plaintiff Rivas that the grower would provide them with housing and that work would begin the day after they arrived at the labor camp.

27. Defendant Junior Baltazar orally promised Plaintiff Lainez and Plaintiff Rivas that the ride from Florida to North Carolina was free of charge.

28 Defendants did not disclose the terms of employment for the 2009 harvest to Plaintiffs at the time of recruitment.

29. On Saturday, April 18, 2009, Defendant Junior Baltazar picked up each Plaintiff and transported them to the Baltazar residence in Ft. Pierce where a crew of many workers had gathered. The workers were divided between two vehicles and they departed for North Carolina.

30. Plaintiff Lainez was a passenger in the bus driven by Defendant Francisco Baltazar, Sr. and Plaintiff Rivas was a passenger in the van driven by Defendant Junior Baltazar.

31. Defendant Francisco Baltazar, Sr. was not authorized by United States Department of Labor ("USDOL") to house or transport migrant agricultural workers.

32. Defendant Junior Baltazar was not a registered farm labor contractor and was not authorized by the USDOL to house or transport migrant agricultural workers.

33. At no time did Defendants provide Plaintiff Lainez or Plaintiff Rivas with the required written disclosures about the terms and conditions of employment they were offering.

**B.    The Baltazar Defendants Instituted a System of Debt Bondage upon Arrival in North Carolina.**

34. The Baltazar caravan drove through the night on or about April 18, 2009 and arrived at the Tart Labor Camp at 6928 Godwin Lake Road in Dunn, North Carolina on or about Sunday, April 19, 2009. The Tart Labor camp consists of several attached cinderblock structures located at the end of a long dirt path that ultimately connects to Godwin Lake Road. The camp consists of a series of connected double-occupancy rooms and a larger barracks-style living quarters for workers. See Exhibit 1. There is a large field separating the cinderblock structures of the Tart Labor Camp from the public road. See Exhibit 2.

35. At the Tart Labor Camp, Defendants Francisco Baltazar, Sr. and Junior Baltazar and their family resided in the part of the camp that was nearest to the dirt path leading to the road. Some of the windows of the Baltazars' living quarters gave them a clear view of anyone who attempted to enter or leave the camp by the path. See Exhibit 2. The Baltazars determined, monitored and regulated exit and entry into the camp.

36. On or about the day that Plaintiff Lainez and Plaintiff Rivas arrived at the Tart Labor Camp, Defendant Francisco Baltazar, Sr. seized control of the camp's kitchen and prohibited the workers from using the camp kitchen to prepare their meals.

37. The Baltazar family controlled and used the camp kitchen to prepare meals which they sold to the workers. Without access to kitchen facilities, Plaintiffs had no option but to purchase prepared meals from the Baltazars. Defendants Francisco Baltazar, Sr. and Junior Baltazar charged exorbitant prices for two (2) paltry meals a day; the charge was the same regardless of whether workers actually ate the meals prepared by the Baltazars. The meals actually provided would not have cost the inflated price that the Baltazars charged Plaintiffs per week to prepare and provide the meals. Due in part to these expenses, Plaintiff Lainez and Plaintiff Rivas began to fall into debt to the Baltazars.

38.     To supplement their meager diet at the camp, Plaintiffs and the other workers would catch fish in a nearby pond and, with no access to kitchen facilities, would cook the fish in a make-shift fire pit that the workers constructed behind the locked camp kitchen.  See Exhibit 2.

39.     In addition, after arrival at the Tart Labor Camp, Francisco Baltazar, Sr. told the Plaintiffs and the rest of the crew that they were each required to pay him $200 for the ride from Florida and that they could not leave until they had paid this debt.  Francisco Baltazar, Sr. knew that few, if any, of the workers on the crew would have $200 to pay him, and that they would be dependent upon him and his family to work their way out of debt.

40.     Defendants offered only minimal work to Plaintiff Lainez, Plaintiff Rivas, and the other workers during the several weeks they were at the camp. On the few days they were given work, Plaintiffs set tobacco plants for Defendants Across the Lake Farming, Douglas Tart and Ann Tart.  With little income, Plaintiff Lainez and Plaintiff Rivas were unable to repay their debts and became even more indebted to the Baltazars.

**C.  The Baltazars Made Threats and Used Weapons To Keep Plaintiffs In Debt Bondage**

41.     After waiting for several days with no work, a small group of people escaped from the Tart Labor Camp during the night on or about April 22, 2009.

42.     Defendant Francisco Baltazar, Sr. responded by telling the workers, including Plaintiffs, that he would not allow anyone to come and get them from his camp and he threatened violence against anyone tried to help workers leave the camp.

43.     A second group of people fled a few days later, also during the night.  Defendants Junior Baltazar and Francisco Baltazar, Sr. saw the group running down the dirt path to Godwin Lake Road and Defendant Junior Baltazar fired gunshots at the fleeing workers.

44. Afterwards that same night, wielding a gun, Defendant Junior Baltazar burst into Plaintiffs' room without their permission and turned on the light. He told Plaintiff Lainez and Plaintiff Rivas that he was counting them to figure out how many workers had escaped.

45. The following morning, Defendant Francisco Baltazar, Sr. gathered the crew and told them that his sons had orders to shoot any worker who tried to leave without paying his debt.

46. Plaintiffs feared the Baltazars and believed they would suffer violence if they tried to escape. As a result, they remained at the labor camp and continued working.

47. The third and largest group fled the camp in the middle of the night either April 29, 2009 or April 30, 2009. This group of workers lived together in the larger barracks-style room on the side of the Tart Labor Camp. At this time, Plaintiffs occupied a different room in the back of the labor camp and did not know of the others' plan to escape. In the morning, Junior Baltazar opened the door to Plaintiffs' room and looked in to verify that Plaintiffs had not yet escaped.

**D. Defendant Francisco Baltazar Thwarted Plaintiff Lainez's Attempt to Escape.**

48. Plaintiff Lainez's own initial attempt to arrange a way for Plaintiff Rivas and himself to leave the camp failed when the person they hoped to take them from the camp backed down out of fear of reprisal by the Baltazars.

**E.     Plaintiffs Escape from the Baltazars and the Tart Labor Camp**

49. The Baltazar Defendants forced Plaintiffs to work for substandard wages amid mounting debt in violation of United States law and compelled their work through physical and psychological coercion including threats of grave physical harm.

50. A relative of one of the workers who had escaped from the camp, as related in Paragraph 47, contacted the National Human Trafficking Resource Center Hotline operated by the Polaris Project.

51. In response to the hotline call, on Monday, May 4, 2009, federal law enforcement agents accompanied by Johnston County Sheriff's Deputy Gary Nord went to the Tart Labor Camp.

52. The federal agents and Deputy Nord found the Baltazars' spent gun casings from the night that the Baltazars shot at the workers fleeing the camp described in Paragraph 43.

53. Plaintiffs were finally able to safely leave the camp in the presence and under the protection of these local and federal law enforcement agents.

**F. Defendants Violated Plaintiffs' Rights Under Basic Labor Laws.**

54. The work Defendants provided to crew members, including Plaintiffs, consisted of setting tobacco plants on land owned, leased or otherwise farmed by Defendant Douglas Tart.

55. Defendants Junior Baltazar, Francisco Baltazar, Sr. Across the Lake Farming, Douglas Tart, and Ann Tart jointly employed Plaintiffs at all times in that Defendant Douglas Tart, among other things, controlled the day's work, where the work was offered, what work was offered, the beginning and ending time of each work day, the approved number of hours for which workers were paid and the worker housing. Either personally or through one of his full-time employees, Defendant Douglas Tart, among other activities, supervised the work of Plaintiff Lainez, Plaintiff Rivas, and the other workers on a daily basis. Defendant Ann Tart, among other activities, produced and maintained the financial records for the farming operation, including the payroll records. She met with the Baltazars on a regular basis and drove by the

Tart Labor Camp daily. The Baltazars were economically dependent upon the Tart Defendants and Across the Lake Farming.

56. Each work day, Defendants Junior and Francisco Baltazar, Sr. and members of their family transported Plaintiff Lainez and Plaintiff Rivas from the Tart Labor Lamp to and from the fields where they worked.

57. Defendants failed to comply with mandatory field sanitation requirements by failing to provide Plaintiffs with disposable cups for drinking water or toilet facilities within one-quarter (1/4) mile walking distance from Plaintiffs' work site.

58. The Baltazars also sold goods at inflated prices to workers on their crew, including Plaintiffs, at the Tart Labor Camp.

59. Defendants were not licensed to sell alcohol in the state of North Carolina.

60. The Baltazars made a profit on the meals and goods they sold to the workers, including Plaintiffs.

61. On payday, Defendants gave Plaintiffs envelopes containing cash and wage statements containing incomplete and inaccurate wage information. These were the only wage statements Plaintiffs received.

62. Defendants failed to make, keep and preserve payroll records that accurately reflected Plaintiffs' wages , dates of work, and hours of work for each Plaintiff for each pay period.

63. Defendants failed to provide Plaintiffs with an accurate itemized, written wage statement for each pay period Plaintiffs worked for Defendants.

64. Defendants failed to pay Plaintiffs their full wages owed when due during the 2009 harvest.

65. Defendants did not obtain written authorization to make withholdings from Plaintiffs' wages. Among other things, Defendants withheld from Plaintiffs' wages for payments towards the Baltazars' exorbitant food charges at the labor camp without Plaintiffs' advance written authorization.

66. Defendants' failure to pay for all hours worked coupled with their unlawful deductions caused Plaintiffs to be paid less than the federal minimum wage during at least one workweek during which they were employed.

67. Defendants failed to pay Plaintiffs the promised wage of Seven Dollars ($7) per hour.

68. Defendants' failure to pay for all hours worked, coupled with their unlawful deductions, caused Plaintiffs to be paid less than the promised wage for each workweek during which they were employed.

69. Defendants failed to accurately report Plaintiffs' wages to the Social Security Administration, to make the required withholdings for Social Security (FICA) and Medicare taxes from Plaintiffs' pay, and to pay the required employer's share to the Social Security Administration.

70. At the Tart Labor Camp, Defendants housed Plaintiffs in substandard conditions, in that, among other things, Defendants housed Plaintiffs in severely overcrowded living quarters and provided Plaintiff Lainez and Plaintiff Rivas with old, stained, uncovered mattresses in disrepair.

71. Defendants Francisco Baltazar, Sr., Junior Baltazar, Douglas Tart, and Ann Tart operated the Tart Labor Camp. In 2009, Defendant Douglas Tart registered the camp as a

migrant labor camp with the North Carolina Department of Labor on December 30, 2008 for 24 workers with anticipated worker occupancy dates of April 1, 2009 to November 15, 2009.

72. The Tart Labor Camp is owned by Defendant Michael Tart.

## VI. FIRST CLAIM FOR RELIEF

### (FLSA)

Plaintiffs incorporate all the preceding paragraphs by reference.

73. All Plaintiffs bring this claim under the FLSA, 29 U.S.C. § 216(b), against all Defendants.

74. As a result of Defendants' unlawful deductions and failure to pay for all hours worked, Plaintiffs were not paid at least the required minimum wage for their work for each hour or part of an hour for all compensable hours that they worked in each workweek during their employment with Defendants in violation of 29 U.S.C. § 206.

75. Defendants' violations were willful within the meaning of the FLSA and its accompanying regulations and showed reckless disregard for the rights of Plaintiffs.

76. As a result, Plaintiffs suffered damages and are entitled to recover the amount of their unpaid wages and an equal amount in liquidated damages, pursuant to 29 U.S.C. §216(b).

77. Plaintiffs have consented in writing to bring this FLSA action. Their written consents are attached as Attachments A and B.

## VII. SECOND CLAIM FOR RELIEF

### (Trafficking in Persons)

Plaintiffs incorporate all the preceding paragraphs by reference.

78. This civil claim is brought by Plaintiffs pursuant to the civil remedy provisions of the Trafficking Victims Protection Act, 18 U.S.C. § 1595 against Defendants Francisco Baltazar, Sr. and Junior Baltazar for violations of 18 U.S.C. § 1589 and § 1590.

79. Defendants Francisco Baltazar, Sr. and Junior Baltazar knowingly made patently fraudulent promises to Plaintiffs regarding the length of employment and the working and living conditions at the Tart Labor Camp.

80. Defendant Francisco Baltazar, Sr. schemed with Junior Baltazar to confine Plaintiffs to the Tart Labor Camp for an extended period of time to secure their labor.

81. Defendants Francisco Baltazar, Sr. and Junior Baltazar trapped Plaintiffs into a cycle of mounting debt in the Tart Labor Camp in furtherance of their trafficking scheme whereupon Defendants could force and did force Plaintiffs to work off their debt.

82. As described in Paragraphs 36 through 53, Defendants Francisco Baltazar, Sr. and Junior Baltazar threatened Plaintiffs verbally, through their acts of violence towards other workers including firing gunshots at escaping workers, and by brandishing weapons in view of Plaintiffs.

83. Defendants thwarted Plaintiffs' initial attempt to escape the Tart Labor Camp as described in Paragraph 48.

84. Defendants used this debt and these threats towards Plaintiffs and the other workers in a campaign of fear as a means of imprisoning Plaintiffs in the Tart Labor Camp.

85. Defendants intended to benefit from their trafficking scheme. By trapping Plaintiffs with mounting debt and allowing no alternative means to pay their debt other than continuing to work for Defendants, Defendants intended to further exploit Plaintiffs for peonage and debt bondage in farmwork.

86. Through these activities, Defendants Francisco Baltazar, Sr. and Junior Baltazar knowingly recruited, transported, and harbored Plaintiffs so as to obtain their labor or services by:

    (a) issuing threats of serious harm or physical restraint against Plaintiffs; or

    (b) through means of a scheme, plan, or pattern intended to cause Plaintiffs to believe that if they did not perform such labor or services, they would suffer serious harm or physical restraint.

87. As a proximate result, Plaintiffs suffered damages.

88. Plaintiffs are entitled to recover damages in an amount to be proven at trial, including attorney's fees.

## VIII. THIRD CLAIM FOR RELIEF

### (AWPA Claims)

Plaintiffs incorporate all the preceding paragraphs by reference.

89. Plaintiffs brings this claim under the AWPA, 29 U.S.C. § 1854(a), against Defendants Francisco Baltazar, Sr., Junior Baltazar, Across the Lake Farming, Douglas Tart and Ann Tart.

90. Defendants intentionally violated the rights of Plaintiffs under AWPA by:

    (a) failing to disclose in writing to Plaintiffs at the time of their recruitment complete and accurate information about their employment in violation of 29 U.S.C. § 1821(a);

    (b) failing to keep proper payroll records in violation of 29 U.S.C. § 1821(d)(1);

(c)     failing to provide each worker with an itemized written wage statement for each pay period in violation of 29 U.S.C. § 1821 (d)(2);

(d)     knowingly giving false or misleading information to a worker in violation of 29 U.S.C. § 1821(f);

(e)     failing to pay wages when due in violation of 29 U.S.C. § 1822(a);

(f)     failing to abide by the terms of the working arrangement in violation of 29U.S.C. § 1822(c); and

(g)     failing to ensure that the facilities where they housed Plaintiffs was in compliance with Federal and State safety and health standards as required by 29 U.S.C. § 1823(a).

91.     As a result, Plaintiffs suffered damages.

## IX.     FOURTH CLAIM FOR RELIEF

**(AWPA Claims for Utilizing an Unregistered Farm Labor Contractor)**

Plaintiffs incorporate all the preceding paragraphs by reference.

92.     Plaintiffs bring this claim under the AWPA, 29 U.S.C. § 1854(a), against Defendants Across the Lake Farming Douglas Tart, and Ann Tart.

93.     Defendants intentionally violated the rights of Plaintiffs under the AWPA by utilizing the services of farm labor contractors Defendants Francisco and Junior Baltazar without taking reasonable steps to determine whether they possessed valid certificates of registration, in violation of 29 U.S.C. § 1842.

94.     As a result, Plaintiffs suffered damages.

## X.     FIFTH CLAIM FOR RELIEF

**(AWPA Claim for Unregistered Farm Labor Contractors)**

Plaintiffs incorporate all the preceding paragraphs by reference.

95. Plaintiffs bring this claim under the AWPA, 29 U.S.C. § 1854(a), against Defendants Francisco Baltazar, Sr. and Junior Baltazar.

96. Defendants Francisco Baltazar, Sr. and Junior Baltazar intentionally engaged in farm labor contracting activities without obtaining a valid certificate of registration as a farm labor contractor in violation of 29 U.S.C. §1811(a).

97. As a result, Plaintiffs suffered damages.

## XI. SIXTH CLAIM FOR RELIEF

### (AWPA Housing Claim Against Camp Owner)

Plaintiffs incorporate all the preceding paragraphs by reference.

98. Plaintiffs bring this claim under the AWPA, 29 U.S.C. § 1854(a), against Defendant Michael Tart.

99. Defendant violated the rights of Plaintiffs under the AWPA by failing to ensure that the housing where Plaintiffs lived was in compliance with Federal and State safety and health standards as required by 29 U.S.C. § 1823 (a);

100. As a result, Plaintiffs suffered damages.

## XII. SEVENTH CLAIM FOR RELIEF

### (NCWHA)

Plaintiffs incorporate all the preceding paragraphs by reference.

101. Plaintiffs bring this claim under the NCWHA, N.C. Gen. Stat. §95-25.22, against Defendants Francisco Baltazar, Sr., Junior Baltazar, Across the Lake Farming, Douglas Tart, and Ann Tart.

102. Defendants intentionally violated the rights of Plaintiffs under the NCWHA by:

(a) failing to pay the promised wage in violation of N.C. Gen. Stat. § 95.25.6; and

(b) withholding portions of Plaintiffs' wages without Plaintiffs' advance written authorization in violation of N.C. Gen. Stat. § 95.25.8.

103. As a result, Plaintiffs suffered damages.

## PRAYER FOR RELIEF

104. Plaintiffs respectfully request that this Court:

(a) assume jurisdiction of this case;

(b) grant Plaintiffs a trial by jury on all of the issues so triable;

(c) declare that Defendants intentionally violated Plaintiffs' rights under the FLSA, the TVPA, the AWPA, and the NCWHA;

(d) enter judgment, grant injunctive relief, and award Plaintiffs damages under the TVPA pursuant to 18 U.S.C. § 1595;

(e) enter judgment, grant injunctive relief, and award Plaintiffs their unpaid minimum wages and a like amount as liquidated damages under the FLSA;

(f) enter judgment, grant injunctive relief, and award Plaintiffs $500 in statutory damages or actual damages, whichever is greater, for each violation of the AWPA;

(g) enter judgment, grant injunctive relief, and award Plaintiffs actual damages for the violations of the NCWHA and an equal amount as liquidated damages;

(h) award Plaintiffs' costs, pre- and post- judgment interest as allowable by law, and a reasonable attorney's fee;

(i) enjoin Defendants from further violations of the law alleged herein; and

(j) grant such other relief as this Court deems just and proper.

Respectfully Submitted on this the 8th day

of April, 2011,


/s/ Caitlin Ryland
State Bar No. 38472
Email: Caitlinr@legalaidnc.org

And

/s/ Lori Johnson
State Bar No. 24227
Email: LoriE@legalaidnc.org

Legal Aid of North Carolina
Farmworker Unit
P.O. Box 26626
Raleigh, NC 27611
Telephone: (919) 856-2180
Fax: (919) 856-2187

Attorneys for Plaintiffs


Dated: April 8, 2011

20
Case 5:11-cv-00167-BR   Document 1   Filed 04/08/11   Page 20 of 20